# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LACEY ROGERS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-13-117-F |
| | ) |
| COMMISSIONER SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for benefits under the Social Security Act. This matter was referred for hearing, if necessary, and for the submission of findings and recommendations pursuant to 28 U.S.C. §§ 636(b)(1)(B), 636(b)(3), and Fed. R. Civ. P. 72(b). The administrative record (Tr.)[1] has been filed, and the appeal has been fully briefed and is ready for disposition. For the reasons set forth below, the undersigned recommends the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

---

[1] The administrative record submitted by the attorney for the Commissioner contains numerous medical records that either have no page numbers or cannot be read because of their size and/or where the page numbers have been placed on the page. In some cases, the page number has been placed in such a way as to obscure content of the record itself—rendering both unreadable. The undersigned has determined that the obscured portions of the record are not material to the recommended disposition. However, the undersigned has had to derive many references by counting forward from the last legible page number. Should an objection to this Report and Recommendation be filed, counsel for the Commissioner shall prepare a courtesy transcript for United States District Judge Stephen P. Friot—accompanied by an addendum to the certification filed on December 11, 2013, explaining that missing or illegible page numbers have been supplied and that they are accurate.

A court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Mays v. Colvin,* 739 F.3d 569, 571 (10th Cir. 2014). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). The court will consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.*; *Bales v. Colvin*, Case No. 13-5147, __ Fed. Appx. __, 2014 WL 3973515 (10th Cir. Aug. 15, 2014). Finally, the court will consider waived all "unspecific, undeveloped, and unsupported" arguments. *Tietjen v. Colvin,* 527 F. App'x 705, 709 (10th Cir. 2013).

## I. THE ALJ'S DECISION.

In a decision issued on December 6, 2011, the administrative law judge (ALJ) found that Plaintiff [2] was not disabled under the Social Security Act and therefore not entitled to benefits. (Tr. 25). The ALJ found Plaintiff to have the following severe impairments: remote stress fracture of the left tibia, depression, personality disorder, and history of drug/alcohol abuse. (Tr. 16). The ALJ found that Plaintiff's intermittent back pain and headache disorder were not severe. (Tr. 16). The ALJ found that Plaintiff

---

[2] Plaintiff is identified as Lacey A. Johnson in the transcript.

did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 16). Upon continuing the sequential analysis, the ALJ found Plaintiff to have the following residual functional capacity (RFC):

> I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours of an eight hour workday; and sit six hours of an eight-hour workday. She can stoop occasionally. She can perform both simple, unskilled tasks and also detailed, semi-skilled tasks (but not complex, skilled tasks) which do not require interaction with the general public.

(Tr. 17). Based on this RFC, the ALJ found that Plaintiff could not perform any of her past relevant work: heavy equipment operator in the Army, prep cook, gymnastics coach, roofer, and telemarketer. (Tr. 24).

However, at step five, the ALJ found that Plaintiff could perform other jobs existing in the national economy. (Tr. 24-25). In reaching this finding, the ALJ relied on the testimony of a vocational expert (VE) and, as a framework, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. *Id.* The VE identified the following representative jobs that a person with Plaintiff's RFC and vocational factors could perform: assembler, press operator/laundry machine operator, and maid/housekeeper. (Tr. 25). Thus, at step five of the sequential analysis, the ALJ found that Plaintiff was not disabled and therefore not entitled to benefits. (Tr. 25).

3

## II. ERRORS ALLEGED ON APPEAL

In this appeal, Plaintiff alleges four errors.[3] First, Plaintiff claims that the ALJ's finding that she can stand and walk six hours in a workday is not supported by substantial evidence. (Plaintiff's Appeal Brief, 7) (hereinafter, Plaintiff's Br., ECF No. 23:7[4]). Second, she argues that the ALJ failed to properly evaluate the opinions of her treating physicians. (Plaintiff's Br., ECF No. 23:8). Third, Plaintiff contends that the ALJ erred in not finding her headaches to be a severe impairment. (Plaintiff's Br., ECF No. 23:11). Fourth, and finally, Plaintiff contends that the ALJ's mental RFC assessment is not supported by substantial evidence. (Plaintiff's Br., ECF No. 23:11). The undersigned finds the first two of these arguments to be dispositive.

### A. RFC Finding that Plaintiff Can Stand/Walk Six Hours

In support of her first claim of error, Plaintiff claims that substantial evidence shows she cannot engage in prolonged standing and walking. (Plaintiff's Br., ECF No. 23:7). She argues that x-rays confirmed a tibial plateau stress fracture in 2007, (Tr. 247), and that beginning in 2009, medical providers suspected a meniscus tear of the left knee and injury to the plica band of the left knee. (Plaintiff's Br., ECF No. 23:7).

---

[3] The Commissioner filed a motion to strike Plaintiff's initial opening brief, noting that the font did not conform with this court's rules in that ECF No. 21 was not in 13-point type in violation of LCvR7.1(d); was longer than 15 pages, but did not have an indexed table of contents in violation of LCvR71(f); and did not contain an e-mail address for the Plaintiff in violation of the Court's Policies and Procedures Manual, I(B)(3) & (4); II(B)(3). Plaintiff filed an amended opening brief, omitting significant content in an apparent attempt to avoid the requirement for an indexed table of contents, and correcting the other deficiencies. As a result, the motion to strike was denied as moot. ECF No. 25.

[4] Citations to Plaintiff's brief will be made by reference to the Court's CM/ECF system. *See* The Bluebook: a Uniform System of Citation, B7.1.4, at 21. (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

In response, the Commissioner argues that many of Plaintiff's contentions depend on the ALJ's finding as to her credibility, a finding she has not challenged in this appeal. (Brief in Support of the Commissioner's Decision, 4) (hereinafter Commissioner's Br., ECF No. 24:4). The Commissioner further contends that Plaintiff's claims relating to her knee function are based upon a misreading of her x-rays, which showed no abnormalities. (Commissioner's Br., ECF No. 24:4) (citing Tr. 375-77, 455, 459). The Commissioner noted state agency consultant Dr. Baldwin's question as to the "accuracy" of consultative physician Dr. Quadeer's diagnosis of left knee pain due to a stress fracture of the "plica," arguing that the plica could not be seen on an x-ray nor could it be subject to a stress fracture. (Commissioner's Br., ECF No. 24:5) (citing Tr. 405, 446). Thus, the Commissioner argues that no "diagnostic testing" existed to support a cause of Plaintiff's claimed knee discomfort in December 2010. (Commissioner's Br., ECF No. 24:5).

The undersigned finds that the ALJ's decision regarding the effect of Plaintiff's left knee pain is not supported by substantial evidence. Beginning in June of 2009, ANRP Wendy Gaston noted that Plaintiff's range of motion in her left knee was limited by pain. (Tr. 460). Later that same month, Dr. Cheyne found her left knee to be tender and suspected a meniscus tear. (Tr. 375). However, he stated that he needed an MRI to confirm his assessment; a little over a month later, he noted that the MRI had still not been approved. (Tr. 374-75). At that time, he found Plaintiff to be in "very

5

significant pain", and prescribed Mobic and Darvocet. (Tr. 374). Plaintiff was seen in the emergency room on July 12, 2009, where it was again recommended that Plaintiff have an MRI. (Tr. 273). Plaintiff was directed to follow up with Dr. Cheyne "ASAP," and ibuprofen was prescribed. (Tr. 273). In August 2009, Reserve Health Readiness Services conducted a Periodic Health Assessment finding that Plaintiff could stand no more than two hours due to her knee pain. (Tr. 379). It was found that Plaintiff did not meet retention standards due to depression, knee pain, and low back pain. (Tr. 378-79). In November 2009, an MRI was again ordered but not completed. (Tr. 392). On December 14, 2009, Plaintiff was medically discharged from the Army Reserve. (Tr. 140).

In October 2010—over a year after Plaintiff first sought treatment for her knee pain—Plaintiff was seen at the Stigler Health and Wellness Center by nurse practitioner Conaway; Plaintiff's left knee—in particular her MCL and LCL—were found to be tender to palpation, and there was extreme laxity of her MCL. (Tr. 450). An MRI was recommended, but Plaintiff stated she had no way to pay for it. She was prescribed Meloxicam. (Tr. 451). Plaintiff was seen for follow up at the Stigler Health and Wellness Center in November 2010; Tracy Baker, M.D., found Plaintiff's knee to be moderately tender, there was slight effusion, and the medial joint bulged when pressed. (Tr. 453). Plaintiff was prescribed Voltaren, and was given a Kenalog injection in her left knee. (Tr. 453).

In December 2010, consultative examiner Mohammed Quadeer, M.D., found that movements of Plaintiff's left knee were "associated with pain with full range of motion." (Tr. 405). There was no effusion or edema at that time, and her knee was stable in all range of motion exercises. (Tr. 405). Dr. Quadeer assessed pain in the left knee due to a stress fracture on June 21, 2007. (Tr. 405). However, Dr. Quadeer referenced a stress fracture to the "plica" rather than the "tibia." (Tr. 405). His examination showed knee flexion to be limited to 100/150 degrees, secondary to pain. (Tr. 407).

State medical consultant Donald Baldwin, M.D., limited Plaintiff to light work, opining that she could stand about six of eight hours. (Tr. 440). He also found that she could only stoop occasionally. (Tr. 441). His comments referenced that no "additional" MRI had been performed, and that Plaintiff continued to have pain in her left knee. (Tr. 440). He failed to mention Plaintiff's attempts to get an MRI approved while still in the Army Reserve, and her inability to pay for that diagnostic test after discharge. (Tr. 440-41). He also failed to mention that Plaintiff received treatment for a soft tissue injury despite the MRI. (Tr. 440-41). He also noted Dr. Quadeer's reference to a "stress fracture of the plica," apparently disregarding his other findings because of this mistake/typographical error, and concluding that knee pain was not present "due" to Dr. Quadeer's diagnosis. (Tr. 446). The state agency medical consultant also stated that "[i]t is noted that no other physical sighs [sic] and no symptoms support the diagnosis

7

of a meniscus tear." (Tr. 446). He referenced a single examination on June 16, 2009, but ignored physical signs found during examinations in October and November of 2010, in which Plaintiff's MCL and LCL were found to be tender to palpation; there was extreme laxity of her MCL; her knee was moderately tender; there was slight effusion; and the medial joint bulged when pressed. (Tr. 450-54). It is not clear whether the state agency consultant was unaware of these records, or just failed to find them relevant for some reason.

In the physical health assessment dated one month after Plaintiff presented with knee pain, Dr. Paparo noted that Plaintiff was unable to *run* two miles, and was only unlimited in walking if *at her own pace and distance*. (Tr. 379). She was noted to be *unable to stand more than two hours*. (Tr. 379). Although the Commissioner claims that this shows no "obvious conflict with the demands of light work" (Commissioner's Br., ECF No. 24:7) (citing SSR 83-10), the Commissioner is clearly incorrect in that light work requires standing for up to six hours in an eight hour day. *See* SSR 83-10, 1983 WL 31251 (many light jobs performed primarily in one location, with ability to stand being more critical than ability to walk).

It may be that the ALJ's finding regarding Plaintiff's ability to stand was based on his opinion that "normal breaks" would have accommodated Plaintiff's inability to stand for more than two hours—but such would be surmise on the undersigned's part. The hypothetical to the VE contains no limitation on the duration of standing at any one time, and so it is unclear whether incorporation of such a limitation would have eroded

8

the occupational base. At step five, the burden of proof is on the Commissioner to show that Plaintiff can perform other work. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

**B. Evaluation of the Medical Evidence**

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.... An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004). The pertinent factors are: (1) the length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to either support or contradict the opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citing *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ "agreed" with the opinion of the state agency consultant (Tr. 21). However, he neither discussed the findings of the other medical sources, nor indicated what weight was being assigned. Upon remand, the Commissioner should explain why Plaintiff is able to perform a full range of light work in light of the specific limitation of standing no more

9

than two hours at a time, and must discuss the findings of the medical sources, state the weight accorded to them, and the reasons for that weight.

In light of this error, it is unnecessary to discuss Plaintiff's other claims of error. However, upon remand, the Commissioner is urged to carefully consider those arguments and more thoroughly evaluate Plaintiff's alleged mental impairments under the applicable standards, and consider whether the ALJ should have found Plaintiff's headaches to be nonsevere.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **November 13, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on October 31, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE